(631 P.2d 251)

No. 52,012

In the Matter of Enforcement of Custody Order by the State of California of Deidre Kaiser and James Kaiser,

Joseph H. Kaiser, *Appellant*, v. Frances McClendon, *Appellee*.

Opinion filed July 10, 1981.

*Clyde M. Burns,* of Burns & Burns, P.A., of Lyndon, for appellant.

*Frank M. Rice,* of Jones, Schroer, Rice, Bryan & Lykins, Chartered, of Topeka; and *Delton Gilliland,* of Coffman, Jones & Gilliland, of Lyndon, for appellee.

Before Spencer, P.J., Parks and Meyer, JJ.

Meyer, J.: This case involves an enforcement of custody order under the Uniform Child Custody Jurisdiction Act.

Appellant and appellee were granted a divorce in 1973 in California and the court in that state granted custody of the parties' children (now ages 9 and 13) to appellee, the custody order providing that appellee not take the children from California without permission of the court. About the last two weeks of August, 1978, appellee moved to Osage County, Kansas, bringing the children with her. Appellant filed an order to show cause in the California court September 18, 1978, which eventually led to a hearing in California on January 15, 1980. The California court notified appellee of the date set for hearing, and appellee, appearing by her attorney, requested the California court to grant her a continuance, alleging that one of her children was ill. Evidence in the court below included an affidavit of her doctor to the effect that during the time of the California hearing the child was suspected of having appendicitis, that the child should not then make the trip to California, and that appellee, on his advice, should remain in Kansas with the sick child. The California court refused to grant a continuance, proceeded to hear the matter, granted appellant temporary custody, and stated the matter would

be reheard upon motion of appellee. Appellant, on January 22, 1980, filed a petition in Osage County, Kansas, asking for enforcement of the California order. The Kansas court declined to grant the prayer of the petition, hence this appeal.

The Uniform Child Custody Jurisdiction Act specifies a certain procedure for enforcing a custody decree of another jurisdiction. K.S.A. 1980 Supp. 38-1315 provides:

"(*a*) A certified copy of a custody decree of another state may be filed in the office of the clerk of any district court of this state. The clerk shall treat the decree in the same manner as a custody decree of the district court of this state. A custody decree so filed has the same effect and shall be enforced in like manner as a custody decree rendered by a court of this state.

"(*b*) A person violating a custody decree of another state which makes it necessary to enforce the decree in this state may be required to pay necessary travel and other expenses, including attorneys' fees, incurred by the party entitled to the custody or such party's witnesses."

K.S.A. 1980 Supp. 38-1313 provides:

"The courts of this state shall recognize and enforce an initial or modification decree of a court of another state which had assumed jurisdiction under statutory provisions substantially in accordance with this act or which was made under factual circumstances meeting the jurisdictional standards of the act, so long as this decree has not been modified in accordance with jurisdictional standards substantially similar to those of this act."

K.S.A. 1980 Supp. 38-1302(*d*) defines "custody decree" as "a custody determination contained in a judicial decree or order made in a custody proceeding, and includes an initial decree and a modification decree."

K.S.A. 1980 Supp. 38-1302(*c*) defines "custody proceeding" to include "proceedings in which a custody determination is one of several issues, such as an action for divorce or separation, and includes child neglect and dependency proceedings."

K.S.A. 1980 Supp. 38-1302(*b*) defines "custody determination" as "a court decision and court orders and instructions providing for the custody of a child, including visitation rights; it does not include a decision relating to child support or any other monetary obligation of any person."

It is noted that the act itself does not specify whether temporary custody orders are included, and we have found no Kansas case in point relative to the specific issue as to whether the terms of that act are meant to include temporary orders. At the outset we might note that, as argued by counsel for appellant, all custody orders

are by their nature temporary in effect. However, in the instant case, the situation is more specific in that the California court's order concluded with this statement: "This matter to be reset on noticed motion of the respondent."

In the absence of Kansas case authority, our search of foreign authorities has led us to the case of *McDonald v. McDonald,* 74 Mich. App. 119, 253 N.W.2d 678 (1977). In *McDonald,* the Michigan Court of Appeals, while holding that Washington was the proper forum for exercise of jurisdiction, refused to enforce a temporary custody order entered by the Washington court. The court cited the Commissioner's Note to § 15 of the uniform act, 9 ULA 99, p. 124, which stated:

" 'The authority to enforce an out-of-state decree does not include the power to modify it. If modification is desired, the petition must be directed to the court which has jurisdiction to modify. . . . *This does not mean that the state of enforcement may not in an emergency stay enforcement if there is danger of serious mistreatment of the child.'* " (Emphasis in original.) 74 Mich. App. at 131.

The court, under facts similar to those now before us, held that enforcement of the temporary custody award would result in serious harm to the child.

In *McDonald,* divorce proceedings were originally commenced by the child's mother in Washington, and the father was awarded temporary custody. After that the father and mother reconciled and the Washington proceedings were dismissed. The mother then took custody of the child unilaterally and came to Michigan. The father filed for divorce in Washington and was granted temporary custody. The Michigan Court of Appeals noted that if the Michigan court enforced the order granting temporary custody to the father, and if the Washington court finally decided the custody issue in favor of the mother, the Michigan court would have caused the child needless trauma. The court further noted that the repeated transfer of the child from one parent to another cannot have anything but an adverse psychological impact on the child and the court refused to contribute to this. The court stated that while it did not condone the mother's conduct in taking the child out of the jurisdiction, the court would not make an innocent two-year-old child a means of punishment. The court, therefore, declined to enforce the temporary order of the Washington court until a final adjudication as to custody had been made by the Washington court.

Some of the general purposes of the act which would be served

by denying enforcement of the order are stated in K.S.A. 1980 Supp. 38-1301(*a*)(1) and (4):

"(1) Avoid jurisdictional competition and conflict with courts of other states in matters of child custody which have in the past resulted in the shifting of children from state to state with harmful effects on their well-being;

. . . . .

"(4) discourage continuing controversies over child custody in the interest of greater stability of home environment and of secure family relationships for the child."

We pause to note that appellee mother has had custody of both the children herein, now aged 13 and 9, continuously since the granting of the original divorce in 1973.

We conclude that what was said in *McDonald* relative to making an innocent child a means of punishment of the mother is particularly appropriate to the case at hand. Furthermore, in the instant case we have a situation where the California court *specifically* determined that the custody would be temporary, because of the closing statement of its order (cited verbatim above) which makes it clear that a further hearing would be held, presumably promptly, upon application for a hearing on the part of the mother. Thus we have a situation, again quite analogous to that of *McDonald,* where there is a distinct possibility of the children being forced to return to California for a brief period until another hearing is had, whereupon it would appear highly possible that they would again be returned to Kansas. Under all of the facts of this case we conclude that these children should not be subjected to such a "shuttle" situation. While generally we believe temporary orders are enforceable under the act, the trial court should have discretion to stay enforcement if such enforcement would operate to cause serious harm to the child. There was no error in the trial court's refusal to enforce this particular order.

Affirmed.